PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

| | |
|---|---|
| TED KRUCHOWSKI; GERALD ADAMS; WILLIAM COOPER; TONY FENNELL; ALAN GEBERT; HAROLD GRIFFIN; STAN HARRIS; FORD HENDERSHOT; DARRELL KELLEY; ALAN LEWIS; JAMES LITTLE; JOE PRIVETTE; ED RISENHOOVER; SUSAN ROGERS; LINDA SLABAUGH; JOEL WHITE, | |
| Plaintiffs-Appellants, | |
| v. | No. 04-7118 |
| WEYERHAEUSER COMPANY, | |
| Defendant-Appellee. | |
| EQUAL EMPLOYMENT ADVISORY COUNCIL; THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; THE WILLIAMS COMPANIES, INC., | |
| Amici Curiae. | |

---

**ORDER**

Filed May 2, 2006

---

Before **BRISCOE**, **ANDERSON**, and **BRORBY**, Circuit Judges.

This matter is before the court on appellee's petition for panel rehearing with suggestion for rehearing en banc. At our request, appellants have responded. Also, we have for consideration motions to file amici curiae briefs supporting appellee's petition, which we grant. Upon consideration of the petition, response, and amici briefs, the panel grants rehearing in part, withdraws the prior panel opinion, and issues the attached revised opinion in its place. The revised opinion omits any discussion of the eligibility factors issue. The panel denies the petition for rehearing in all other respects.

The suggestion for rehearing en banc was circulated to all active judges of the court. Because no active judge called for a poll, the suggestion for rehearing en banc is denied.

Entered for the Court
ELISABETH A. SHUMAKER, Clerk


By
    Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 2, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

TED KRUCHOWSKI; GERALD
ADAMS; WILLIAM COOPER;
TONY FENNELL; ALAN GEBERT;
HAROLD GRIFFIN; STAN HARRIS;
FORD HENDERSHOT; DARRELL
KELLEY; ALAN LEWIS; JAMES
LITTLE; JOE PRIVETTE; ED
RISENHOOVER; SUSAN ROGERS;
LINDA SLABAUGH; JOEL WHITE,

      Plaintiffs-Appellants,

v.

WEYERHAEUSER COMPANY,

      Defendant-Appellee.

No. 04-7118

---

EQUAL EMPLOYMENT ADVISORY
COUNCIL; THE CHAMBER OF
COMMERCE OF THE UNITED
STATES OF AMERICA; THE
WILLIAMS COMPANIES, INC.,

      Amici Curiae.

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF OKLAHOMA
### (D.C. No. 03-CV-649-P)

---

Submitted on the briefs:

J. Vince Hightower, Tulsa, Oklahoma, for Plaintiffs-Appellants.

Kathy R. Neal, William S. Leach, Michael F. Smith, Eldridge Cooper Steichen & Leach, PLLC, Tulsa, Oklahoma, for Defendant-Appellee.

Stephen A. Bokat, Robin S. Conrad, Robert J. Costagliola, National Chamber Litigation Center, Inc., Washington, DC, for Amicus Curiae, The Chamber of Commerce of the United States of America.

Ann Elizabeth Reesman, McGuiness Norris & Williams, LLP, Washington, DC, for Amicus Curiae, Equal Employment Advisory Council.

J. Patrick Cremin, Steven A. Broussard, Marshall J. Wells, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Oklahoma, for Amicus Curiae, The Williams Companies, Inc.

---

Before **BRISCOE**, **ANDERSON**, and **BRORBY**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Plaintiffs filed an action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, against defendant, their former employer. Defendant terminated plaintiffs' employment as part of a reduction in force (RIF). Each plaintiff signed an identical Release of Claims in order to obtain a severance package in exchange for his or her waiver of the right to assert an ADEA claim against defendant. The initial issue before the district court, and now on appeal, is whether the Release can be enforced. Plaintiffs contend that the Release is void as a matter of law because it failed to conform to the statutory requirements

for a Release under the ADEA as amended by the Older Workers Benefit

Protection Act (OWBPA), 29 U.S.C. § 626(f)(1), (4).  The district court granted

defendant's motion for summary judgment, finding that the Release of Claims

complied with the statutory requirements.  Because we conclude that the Release

did not comply with a certain requirement of § 626(f)(1)(H), we reverse and

remand for further proceedings.[1]

I

Plaintiffs were among thirty-one former employees defendant selected for a

RIF at Valliant Containerboard Mill in Valliant, Oklahoma.  At the time each

plaintiff was informed of his or her termination, each received, among other

things, a letter from the Mill manager and a Group Termination Notification.

Attached to the notice was a list of those employees selected for termination and

eligible for severance pay and those employees not selected for termination and

therefore not eligible for severance pay.  The employees on both lists were

identified only by job titles and ages.  After plaintiffs' termination, defendant

mailed each one the Release of Claims, a calculation of severance pay, and a copy

of the Salaried Severance Pay Plan Summary.

---

[1]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.

After plaintiffs filed their complaint alleging age discrimination, the parties filed cross-motions for summary judgment. The district court granted defendant's motion. The district court ruled:

> The record establishes the releases signed by each Plaintiff comply with statutory demands of OWBPA, meeting the threshold requirements of a knowing and voluntary waiver of one's rights under the ADEA. Further, analysis of the circumstances under which each Plaintiff executed their release demonstrates that the releases were rendered in the absence of fraud, coercion, duress or mistake. In fact, the totality of the circumstances reveal that each Plaintiff understood the terms of the release, had time to review the terms, had opportunity and advice to seek counsel, and could have employed the revocation provision. Plaintiffs admit the process was not coercive, nor were they intimidated by Weyerhaeuser or its representatives. Weyerhaeuser, having satisfied both OWBPA requirements and having demonstrated a knowing and voluntary participation under a totality of the circumstances approach, is entitled to a summary judgment determination that the releases at issue, signed by each named Plaintiff, are valid and preclude Plaintiffs' claims under the ADEA.

Aplt. App. at 17 (citations omitted).

II

"We review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court." *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1227 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c). To apply this standard, we examine the factual record and any reasonable inferences therefrom in the light most favorable to plaintiffs. *See Bennett*, 189 F.3d at 1227. "If there is no genuine issue of material fact in dispute, we then must determine if the substantive law was correctly applied by the district court." *Id.*

The OWBPA "is designed to protect the rights and benefits of older workers." *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998). It "imposes specific requirements for releases covering ADEA claims." *Id.* at 424; *see also id.* at 427 ("The OWBPA implements Congress' policy via a strict, unqualified statutory stricture on waivers, and we are bound to take Congress at its word."). "'An individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary . . . . [A] waiver may not be considered knowing and voluntary unless at a minimum' it satisfies certain enumerated requirements . . . ." *Id.* at 426 (quoting 29 U.S.C. § 626(f)(1)). This court has summarized these § 626(f)(1) statutory requirements as follows:

> (1) the release must be written in a manner calculated to be understood by the employee signing the release, or by the average individual eligible to participate;
>
> (2) the release must specifically refer to claims arising under the ADEA;
>
> (3) the release must not purport to encompass claims that may arise after the date of execution;

(4) the employer must provide consideration for the waiver or release of ADEA claims above and beyond that to which the employee would otherwise already be entitled;

(5) the employee must be advised in writing to consult with an attorney prior to executing the agreement;

(6) the employee must be given at least 45 days to consider signing if the incentive is offered to a group;

(7) the release must allow the employee to revoke the agreement up to 7 days after signing; and

(8) if the release is offered in connection with an exit incentive or group termination program, the employer must provide information relating to the job titles and ages of those eligible for the program, and the corresponding information relating to employees in the same job titles who were not eligible or not selected for the program.

*Bennett*, 189 F.3d at 1228 (citing 29 U.S.C. § 626(f)(1)(A)-(H)). "[T]he statutory factors are not exclusive and other circumstances, outside the express statutory requirements, may impact whether a waiver under the OWBPA is knowing and voluntary." *Id.*

As a preliminary matter, plaintiffs argue that the district court improperly placed the burden of proof on them. For claims concerning § 626(f)(1)(A)-(H), the OWBPA clearly places the burden on the party asserting a valid waiver of rights to an age discrimination claim to show that execution of the waiver was knowing and voluntary. 29 U.S.C. § 626(f)(3). The parties agree that defendant had the burden to prove the validity of the Release. Ultimately, the district court placed that burden on defendant. *See* Aplt. App. at 17 ("Weyerhaeuser having

satisfied both OWBPA requirements and having demonstrated a knowing and voluntary participation under a totality of the circumstances approach is entitled to a summary judgment determination that the releases . . . are valid and preclude Plaintiffs' claims under the ADEA."). Thus, we reject plaintiffs' burden of proof argument.

Plaintiffs also argue that the Release of Claims did not meet all of the OWBPA requirements and was not knowing and voluntary. They do not dispute that the Release was written in a manner to be understood by all affected employees, that it specifically mentioned the ADEA, and that they waived their rights in exchange for consideration in addition to anything of value to which they were already entitled. *See* 29 U.S.C. § 626(f)(1)(A), (B), (D). But they do argue that defendant failed to meet each of the other OWBPA criteria. Because we conclude that the Release did not meet a certain informational requirement specified in § 626(f)(1)(H)(i), we do not consider any of the other statutory requirements or the arguments plaintiffs make with respect to those requirements.

Plaintiffs argue that the Release fails as a matter of law because it did not contain the required group informational disclosures for the "decisional unit" as is required by § 626(f)(1)(H)(i). Section 626(f)(1)(H)(i) provides in part:

> (H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer . . . informs the individual in writing in a manner calculated to be understood by the average individual eligible

to participate, as to–

> (i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program . . . .

The class, unit, or group of individuals considered for termination is determined by examining the "decisional unit." 29 C.F.R. § 1625.22(f)(1)(iii)(C). "A 'decisional unit' is that portion of the employer's organizational structure from which the employer chose the persons who would be offered consideration for the signing of a waiver and those who would not be offered consideration for the signing of a waiver." *Id.* § 1625.22(f)(3)(i)(B).

Defendant's Group Termination Notice notified plaintiffs that the "decisional unit" was all salaried employees of defendant employed at the Valliant Containerboard Mill. Aplt. App. at 58. Defendant later, in responding to interrogatories, indicated the "decisional unit" actually consisted of those salaried employees reporting to the Mill manager. *Id.* at 26-27. Fifteen employees at the Mill, who worked in human resources, information technology, and accounting/purchasing, did not report to the Mill manager. Thus, those fifteen employees, over ten percent of the employees at the Mill, were not part of the actual "decisional unit," although the Group Termination Notice indicated that they were included.

Plaintiffs correctly argue that the "decisional unit" of which they were

notified and the actual "decisional unit" are two separate groups.    *Compare* 29 C.F.R. § 1625.22(f)(3)(iii)(A), (iv)(A) (example of "decisional unit" being entire facility),   *with id.*   § 1625.22(f)(3)(iii)(D), (iv)(D) (example of "decisional unit" being employees reporting to one person).    Thus, the information defendant gave to plaintiff was inaccurate.  *See id.* § 1625.22(b)(4) ("The waiver agreement must not have the effect of misleading, misinforming, or failing to inform participants and affected individuals."); *id.* at § 1625.22(b)(5) (applying § 1625.22(b)(4) to § 626(f)(1)(H)).

In addition, the information defendant gave to plaintiffs emphasized its financial challenges and the fact that the Mill would continue to restructure and combine jobs.  Aplee. Supp. App. at 378.  According to the regulations, when an employer intends to eliminate excessive overhead, expenses or costs, the facility will be the "decisional unit."  *See* 29 C.F.R. § 1625.22(f)(3)(ii)(C).  Under this regulation, the fifteen employees would be included in the "decisional unit," unless defendant had indicated otherwise, which it did not.

Even defendant recognizes that there is a difference between the "decisional unit" it identified to plaintiffs and the intended "decisional unit." *See* Aplee. Supp. App. at 265 (stating that its interrogatory response was "only a slight clarification or slightly more detailed response" to what it characterized as clear information).  Defendant, however, presented no evidence that plaintiffs

either knew or should have known that the "decisional unit" was other than that specified in the information provided. The fact that the RIF notice came from the Mill manager is insufficient to prove plaintiffs knew that fifteen employees were not part of the "decisional unit."

Nonetheless, defendant argues that it made proper informational disclosures, because the OWBPA does not define "decisional unit," the regulations require the employer's organizational structure to be considered in formulating and evaluating the organizational unit, and those persons not included in the "decisional unit" were not part of its organizational reporting hierarchy. *See* 29 C.F.R. § 1625.22(f)(3)(i)(A)-(B). Although we recognize that an employer's organizational structure is important, defendant expressly notified plaintiffs of a "decisional unit" that was not the actual "decisional unit." Defendant had the burden to prove a valid waiver. *See* 29 U.S.C. § 626(f)(3). By its own admission, it failed to provide clear information to plaintiffs about the "decisional unit." *See id*. § 626(f)(1)(H) (requiring waiver information to "inform[] the individual in writing in a manner calculated to be understood by the average individual eligible to participate"). Furthermore, defendant had the responsibility to consider its own organizational structure and decision-making process at the time it identified its "decisional unit." *See* 29 C.F.R. § 1625.22(f)(3)(i)(B). Defendant itself ignored its structure and decision-making hierarchy when it notified plaintiffs of the "decisional unit."

Two of the amici curiae characterize defendant's error in identifying the "decisional unit" as de minimis, because the list of job titles and ages defendant appended to the Group Termination Notice actually represented the "decisional

-12-

unit." An employer's responsibility to provide information regarding the "decisional unit" and job titles and ages are two separate requirements. *See* 29 U.S.C. § 626(f)(1)(H)(i) & (ii). Defendant, a large company that should have been familiar with the OWBPA requirements, simply gave plaintiffs the wrong "decisional unit" information. Under the circumstances, we cannot say that that error was de minimis.

The statute requires that terminated employees be informed of the "decisional unit" at the time they consider whether to waive any ADEA claims. "The purpose of th[is] informational requirement[] is to provide an employee with enough information regarding the program to allow the employee to make an informed choice whether or not to sign a waiver agreement." 29 C.F.R. § 1625.22(f)(1)(iv); *see Adams v. Moore Bus. Forms, Inc*., 224 F.3d 324, 328 (4th Cir. 2000). Defendant failed to provide the correct, mandated information when it informed plaintiffs that the "decisional unit" included all salaried employees of the Mill. Because the information defendant provided did not meet the strict and unqualified requirement of the OWBPA, the Release is ineffective as a matter of law. *See Oubre*, 522 U.S. at 427-28. Plaintiffs therefore did not waive their right to pursue claims under the ADEA. [2]

---

[2]   Also, plaintiffs argue that defendant listed an employee as part of the group termination who was actually not terminated. According to plaintiffs, the

(continued...)

## III

"The absence of even one of the OWBPA's requirements invalidates a waiver." *Butcher v. Gerber Prods. Co.*, 8 F. Supp. 2d 307, 314 (S.D. N.Y. 1998). Because defendant failed to show that the strict statutory requirements of § 626(f)(1)(H) of the OWBPA were met, we conclude that plaintiffs' Releases were not knowing and voluntary. Accordingly, the Releases executed by plaintiffs are invalid and unenforceable with respect to any age discrimination claim.

The judgment of the district court is REVERSED, and the case is REMANDED for further proceedings on plaintiffs' ADEA claims.

---

[2](...continued)
inclusion of this employee inaccurately represented that three of thirty-one terminated employees were under the age of forty instead of only two of thirty. Defendant responds that at the time the RIF materials were prepared this employee was to be included in the RIF, but she was later involuntarily separated from defendant. In light of our conclusion that the information given about the decisional unit was inaccurate, we do not address this portion of plaintiffs' argument.